UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

C/A: 2:22-1079-BHH-MHC

YARITZEL HALL PERRY,
PATRICE SIMMONS, and
BRIONNA JOHNSON
    Plaintiffs

v.

BERKELEY ELECTRIC COOPERATIVE
    Defendant

JURY TRIAL DEMANDED

RECEIVED
USDC CLERK, CHARLESTON, SC
2022 APR -5  AM 11: 31

# COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is an action to redress the deprivation of rights secured to the Plaintiffs by the Constitution and laws of the United States. The defendant, acting through its highest policy-setting officials for the matters in question, discriminated against the Plaintiffs by terminating them and/or otherwise retaliating against them when other similarly situated employees who were not in the same racial and ethnic protected group were not so terminated and/or retaliated against.

## II. JURISDICTION AND VENUE

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331, 1332 and 28 U.S.C. §1343. Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391(b) in that the claims arose in this district and Plaintiffs reside in this district.

## III. THE PARTIES

3. Plaintiff Patrice Simmons is a Black, African-American woman. She is a citizen of the State of South Carolina. She is hereafter referred to as "Simmons".

4. Plaintiff Yaritzell Hall Perry is a Black woman of Hispanic origin. She is a citizen of the State of South Carolina. She is hereafter referred to as "Hall Perry."

5. Plaintiff Brianna Johnson is a Black, African-American woman. She is a citizen of the State of South Carolina. She is hereafter referred to as "Johnson".

6. Defendant Berkeley Electric Cooperative is the largest not-for-profit electric cooperative in South Carolina, serving over 96,000 active members and more than 112,000 active meters in Berkeley, Charleston and Dorchester counties.

### IV.   STATEMENT OF FACTS

7. Patrice Simmons was hired by Berkeley on October 3, 2011 as the office manager for the Johns Island and Awendaw offices. Simmons is an African-American female.

8. Simmons was terminated from her employment with Berkeley by supervisor Amy Langdon, Vice President of Member Services, a Caucasian female.

9. Langdon was previously found to have engaged in falsifying company records by adding overtime that she did not actually work to her timesheet.

10. Langdon also deleted negative payment history from her personal account.

11. On or around 2013 Langdon gave advance notice of interview questions that were going to be asked of interviewees for a vacant position to another employee who was interviewing for the position. As a consequence, she was demoted from the job in the IT department that she had been hired into. She was never terminated for her employee misconduct despite the fact that each of these infractions violated company policy.

12. Instead of being disciplined, other than the demotion, after approximately six months Langdon was prompted to higher level positions to Assistant Manager and then Manager of the Goose Creek District office.

13. Unlike Langdon, Simmons never had any disciplinary write-ups nor was she coached on her performance.

14. When Simmons entered the position of Office Manager for Johns Island and Awendaw, there were matters from the prior manager that she was required to deal with and to take corrective action. For example, there were member accounts that had not made any payments in over a year and yet service had not been disconnected. There were member accounts that had not been collected on in three to four months.

15. In or around June 2018 Simmons was promoted to the position of Director of Community Services. At the same time, she held the position of Awendaw Office Manager. Shepherd would periodically tell Simmons that she was too talented and it would be a waste of her time to only work out of Awendaw.

16. Caucasian females are provided with preferential treatment as regards performance of their jobs.

17. In addition to Langdon, Lise Dahlman was shown favored treatment when Simmons, as the supervisor required complete her performance evaluation, was instructed by Scott Shepherd, to change the ratings that Simmons had given to Dahlman, against Simmons' judgment, she was instructed to "be nice" to Dahlman in evaluating her performance.

18. On multiple occasions from 2012 to 2019 Scott Shepherd stated to Simmons that he would fire her and then would try to laugh it off as though it were a joke. Upon

information and belief, this was one of his means of attempting to intimidate and control Simmons because he always wanted people to kowtow to him and not disagree with him about anything.

19.   On one occasion during a meeting at the Goose Creek District office with District Office Managers, Line Superintendents and service managers, everyone was speaking up and giving their feedback on whatever was the topic of discussion. However, when Simmons attempted to speak, Shepherd held up his hand for her not to speak. A second time during the meeting when Simmons attempted to speak Shepherd once again shushed Simmons from speaking. It was apparent from his repeated action during this meeting that he was not showing Simmons the respect deserving of a managerial employee like herself. There was one other African-American employee in this meeting.

20.   Simmons was denied the right to hire employees of her choosing when they were African-American, even when they were more than qualified for the position.

21.   On or about December 2018, Simmons sought to hire Anetria Harrell, an African-American female, who had applied multiple times for the position of member service representative.

22.   When Simmons informed Shepherd that she wished to hire Harrell, who was the wife of another Berkeley employee, Shepherd stated that they wanted to get away from hiring family members. Simmons ceased her efforts to hire Harrell, only to find that there were numerous other Caucasian employees whose close relatives were also employed within less than a month after her attempt to hire Harrell. However, no challenge was made to their employment.

23. At a later time in 2018 Simmons once again sought to hire Harrell. President and CEO Dwayne Cartwright informed Simmons that she should hire the most qualified individual for the job.

24. After going through the interview process, Simmons again selected Harrell and forwarded a memorandum requesting to hire her. Simmons was informed by Shepherd not to hire Harrell because he did not believe her to be the best qualified; however, Shepherd was not present during the interview process. This is the same instance as Simmons. It started with Scott emailed advising that Simmons needed to hire someone else. Then she replied to his email and questioned why. In his response, he copied Meade and Cartwright which brought them into the conversation. That's when the "GM" happened. Simmons attempted to hire Harrell on multiple other occasions.

25. When Simmons replied that she did not understand, since she had been given the green light to hire the person she deemed most qualified. By the end of the week, Simmons was summoned to a meeting at the Monck's Corner office.

26. Present in the meeting were Shepherd, Louis Meade, and Cartwright. Cartwright was red-faced and angry, pointed his finger in Simmons' face and informed that he was not GM, he was the CEO and that he should be addressed as such.

27. Simmons had put "GM" meaning good morning in an email that day but Cartwright apparently thought that she was belittling him by referring to him as general manager.

28. Cartwright proceeded to berate Simmons for not going with the team and questioning leadership; that she was supposed to just do what she was told even if she did not understand it.

29. After Cartwright left, Shepherd proceeded to tell Simmons that he was going to dismantle her job and that she would no longer be Manager of Community Services. She would only be Manager of the Awendaw office. Simmons was threatened with demotion because she dared to recommend and attempt to hire an African-American female whom she deemed to be most qualified for the position. After seeing how visibly upset Simmons was by the interaction, HR made Shepherd leave and coerced Cartwright to return. Cartwright touched Simmons on her right shoulder and apologized for his actions stating that his wife knows how upset he can become at times. Cartwright listened to Simmons' concerns about Shepherd and assured her that her job would be safe as long as he was there and she would not be fired. He agreed that Shepherd's actions were retaliatory in nature.

30. On or about October 2019, Simmons was assigned to replace another employee as the Berkeley Electric Trust Board Administrator. However, her job description was never updated to reflect these additional duties. Simmons advised Shepherd, Meade twice and new CEO Mike Fuller.

31. On August 25, 2020 Simmons was advised that her functions as Community Services Manager would be eliminated and she became responsible only for the Awendaw office as the manager.

32. In October 2020 Simmons was told that she could no longer utilize a company vehicle. She was required to drive some 55 miles one way and would not have otherwise accepted the position in Awendaw without this perquisite of the job

33. When the Berkeley CEO and vice presidents could not articulate why Simmons' position was being changed, she informed them of her belief that she was being

discriminated against based upon race and retaliated against for having spoken out about discriminatory treatment of herself and other African-Americans.

34. On April 1, 2021 Simmons was informed that her job was being terminated. None of the items mentioned in the termination letter had ever been previously discussed with Simmons.

35. Plaintiffs have filed a complaint of discrimination with the Equal Employment Opportunity Commission. A right to sue letter was issued and thus they have met all of their administrative exhaustion requirements.

36. Plaintiff Hall Perry was employed as a public service representative by Berkeley from January 7, 2020 to October 1, 2020.

37. Throughout the entire period of her employment, whenever Hall Perry had meetings with upper management they would make fun of her accent. Hall Perry is a Black woman of Panamanian descent. She was specifically hired by Berkeley for her bi-lingual skills but was kept away from dealing with the LEP members for the most part. Amy Landong, along with Libby and Tony, made sure of that. Instead they would have Yajaira Torres Bess do the work and kept Hall Perry in the office overwhelming her with and demanding that he focus on the newsletter only which took most of her time because Libby was never pleased and continually harassed Hall Perry with unrealistic deadlines as they are presently doing to Plaintiff Jonson.

38. Hall Perry was left out of decision-making and denied access to information that she needed in order to properly perform her job.

39. Any suggestions or ideas that Hall Perry presented that would have improved job efficiency and service delivery were always turned down or ignored after Leisa Stilley

retired. Part of the responsibilities of Hall Perry were given to someone else (Torres Bess Yajaira a non-Black, Caucasian appearing female unlike Hall Perry who is a Black Spanish speaker.

40. Hall Perry was denied the opportunity to be trained on new software.

41. Hall Perry was denied the opportunity to perform on radio shows where Defendant Berkeley sought to use the media to enhance its service delivery.

42. Hall Perry was regularly compared to a Caucasian employee Yajaira Torres Bess, whose writing skills were inferior to Hall Perry's. Torres Bess was however protected by Libby Roerign and Tony Vincent and not held to the same standard to which they held Hall Perry. Roerig compared also to herself and told Hall Perry that she had 20 years of experience working for a newspaper company, yet told Hall Perry that she needed to write more on the level of that person or there would be consequences. Hall Perry's supervisor regularly compared her performance to the supervisor, a Caucasian female with a Master's Degree in Communications, Roerig.

43. However when Hall Perry sought permission to take LinkedIn classes to assist with her writing skill development, she was denied that opportunity.

44. On August 6, 2020 Hall Perry was disciplined and placed on a Performance Improvement Plan (PIP) for sixty (60) days.

45. Hall Perry made complaints to management regarding what she reasonably believed to be discriminatory treatment based upon race, national origin, color, and age.

46. During the same period when Hall Perry was placed on a PIP for alleged poor work performance, others who were not in the same protected category as her were permitted to continue their employment despite that they were not performing up to standard.

Yajaira Torres Bess, former bilingual public relations person, was not performing up to par on her new role as the grassroots specialist. She would spend most of her time interfering with Hall Perry's role yet Roerig and Vincent permitted it and supported it. Often other employees would compare Hall Perry and Torres Bess and say that Hall Perry topped the work done by Torres Bess. Torres Bess and Vincent were good friends and she would often go to him complaining about things that were not going her way.

47. Prior to being placed on the PIP Hall Perry had not had any previous disciplinary write-ups.

48. Hall Perry was treated differently than others when Berkeley permitted other, similarly situated employees work from home during the pandemic, however she was not permitted to do the same because according to them the nature of her work made it impossible for her to work from home. Eventually, months later the Defendant allowed Hall Perry to work from home with faulty equipment bu required her to come back to the site before everyone else, claiming that she needed to be monitored due to her productivity.

49. On October 1, 2020 Hall Perry was informed that she was being terminated purportedly for insufficient performance of job duties and failure to meet expectations of the PIP. She had not had any further infractions and still had time before PIP was complete. Hall Perry was fired while she was out on sick leave being checked for the emotional distress that Defendant caused her, including nonstop headaches, chest pain and anxiety.

50. Brianna Johnson is an African-American female who has been employed at Berkeley since February 17, 2020. She was hired by Patrice Simmons as a community service representative.

51. On or about September 2020 Johnson was informed that her job would be changing and moving to a different department. The move was to the communications department.

52. Johnson was informed that she would have two weeks' time within which to take over and master the publication of the company newsletter. Johnson informed them that her academic degree was in social work and that it was not her expertise to do communications such as a newsletter.

53. On or about November 2020 Johnson filed a grievance with Human Resources because she was informed that she was considered to be insubordinate if she was meeting the newsletter deadlines.

54. In contrast to the very short deadline that Johnson was given for meeting the newsletter requirements, a Caucasian male (Chris Makowski) who did have a college degree in communications, and social media, he was given six months within which to transition into the same job as Johnson. That employee eventually left the company due to supervisor harassment. However, he was not subjected to the same harsh deadlines given to Johnson to complete the newsletter work.

55. While the Caucasian male employee was employed there were complaints about his job performance, however, these were never addressed with Makowski as he admitted to Johnson.

56. Johnson received lowered ratings in some of the performance evaluation categories than she had previously received. In a meeting with Vice President of Economic Development, Tony Vincent; Vice President of HR, Louise Meade; and Manager of Communications, Libby Roerig, Johnson's supervisor, Libby Roerig, questioned Meade as to whether she frequently had secret meetings with employees. Roerig also stated that she lowered Johnson's rating on her performance evaluation because "she reached out to several vice presidents directly instead of going through her supervisor". Also during this conversation, Vincent advised Johnson that her "degree probably won't be used" which conflicts with the intent when she applied for and was subsequently hired.

57. Johnson complained that Black female employees experience a difficult time at the company.

58. Johnson was required to be the sole manager of all aspects of the newsletter design and content, with a minimum of five articles for each weekly newsletter. She was also required to meet with two departments weekly, write an article and give the interviewee 24-36 hours for revisions.

59. The newsletter responsibilities became so overwhelming that Johnson was unable to satisfactorily complete her community service job duties.

60. In a written email dated November 13, 2020 to Louise Meade, vice president of human services, Johnson expressed her view that, as a young Black woman, she found it difficult to express her feelings without being seen as difficult, insubordinate or ungrateful.

61.     Upon information and belief, Defendant deliberately placed Johnson in a position and tasked her with mastering a new job that was outside her area of expertise in order that it would have a pretext to cause her to fail.

**COUNT ONE**     **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (RACE DISCRIMINATION)**

1-61    Paragraphs 1- 61    are hereby incorporated by reference and made paragraphs 1-61  of this Count One.

62.     The acts of Defendant as alleged in paragraphs 1-61   were discriminatory based upon race of Plaintiffs and was in violation of Title VII of the /civil Rights Act of 1964. The racially discriminatory conduct of Defendant shows a pattern of failures to hire African-Americans. Failures to promote African-Americans, establishment of disparate work performance rules for African-Americans, and terminations of African-Americans.

63.     Plaintiffs have been damaged thereby.

**COUNT TWO**    **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (RETALIATION)**

1-61    Paragraphs 1- 61    are hereby incorporated by reference and made paragraphs 1-61  of this Count Two.

62.     The acts of Defendant as alleged in paragraphs 1 - 61   were in retaliation for Plaintiffs having engaged in protected activity of complaining about racially discriminatory treatment of Defendant's employees.

63.     Plaintiffs have been damaged thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand

A.   A trial by jury on all counts;

B.   Compensatory damages;

C.   Reinstatement to their employment;

D.   Attorney's fees and costs pursuant to 42 U.S.C. Section 1988;

E.   Such other remedies as the court deems just and proper.

THE PLAINTIFFS

BY: /s/Patrice Simmons

BY: /s/Yaritzel Hall Perry

BY: /s/Brionna Johnson

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand

A.     A trial by jury on all counts;

B.     Compensatory damages;

C.     Reinstatement to their employment;

D.     Attorney's fees and costs pursuant to 42 U.S.C. Section 1988;

E.     Such other remedies as the Court deems just and proper.

THE PLAINTIFFS

BY: _____
Yaritzell Hall Perry, Pro Se
2238 AZ Road
North, SC 29112
Tel: (803) 308-7631

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand

A. A trial by jury on all counts;

B. Compensatory damages;

C. Reinstatement to their employment;

D. Attorney's fees and costs pursuant to 42 U.S.C. Section 1988;

E. Such other remedies as the Court deems just and proper.

THE PLAINTIFFS

BY: *Patrice Simmons*

Patrice Simmons, Pro Se
156 Nolin Road
Moncks Corner, SC 29461
Tel: (843) 814-6383

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand

A.   A trial by jury on all counts;

B.   Compensatory damages;

C.   Reinstatement to their employment;

D.   Attorney's fees and costs pursuant to 42 U.S.C. Section 1988;

E.   Such other remedies as the Court deems just and proper.

THE PLAINTIFFS

BY: *Brianna J. Johnson*
Brianna Johnson, Pro Se
8 Falkirk Drive
Charleston, SC  29407
Tel:  (843) 810-4671